IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jerrell Reddic, | ) | Case No. 8:12-cv-232-MGL-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| | ) | |
| Attorney General Alan Wilson; Warden | ) | |
| Leroy Cartledge,[1] | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment.
[Doc. 17.] Petitioner is a state prisoner who seeks relief pursuant to Title 28, United States
Code, Section 2254. Pursuant to the provisions of Title 28, United States Code, Section
636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to
review post-trial petitions for relief and submit findings and recommendations to the District
Court.

Petitioner, proceeding pro se, filed this Petition for writ of habeas corpus on January
19, 2012.[2] [Doc. 1.] On April 11, 2012, Respondent filed a motion for summary judgment
and a return and memorandum. [Docs. 16, 17.] On April 12, 2012, the Court filed an
Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Petitioner

_____

[1] Because a prisoner's custodian is the proper respondent in a habeas corpus action, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), Respondent Attorney General Alan Wilson was terminated as a party on January 27, 2012, as directed by the Court's Order directing Petitioner to bring the case into proper form. [Doc. 7.] Accordingly, throughout this Report and Recommendation the Court refers to Respondent Warden Leroy Cartledge as "Respondent."

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on January 19, 2012. [Doc. 1-2 (envelope stamped as received by prison mailroom on January 19, 2012).]

of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 18.] Petitioner, proceeding with the assistance of counsel, filed a response in opposition on July 16, 2012. [Doc. 26.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined at the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Dorchester County Clerk of Court. [Doc. 1 at 1.] In April 2002, Petitioner was indicted for murder. [App. 138.[3]] On September 11, 2003, represented by John Loy ("Loy"), Petitioner pled guilty as indicted. [App. 1–23.] On September 15, 2003, Petitioner was sentenced to life imprisonment. [App. 43.] No direct appeal was filed.

**PCR Proceedings**

*First PCR Application*

On May 25, 2004, Petitioner filed a pro se application for post-conviction relief ("PCR"). [App. 52–68.] As his grounds for relief, Petitioner alleged ineffective assistance of counsel and unknowing and unintelligent guilty plea. [App. 54.] Specifically, as to his ineffective assistance of counsel claim, Petitioner alleged Loy was ineffective for (1) failing to properly investigate and advise Petitioner on the defense of self-defense prior to Petitioner's guilty plea; (2) failing to advise Petitioner on the defense of voluntary

---

[3] The Appendix can be found at Docket Entry Number 16-6.

manslaughter; and (3) misleading Petitioner into believing Petitioner had entered into a negotiated plea agreement. [App. 59–66.] Petitioner also noted on the PCR application form that he did not appeal his conviction or sentence because "Counsel failed to file Notice of Appeal." [App. 53.] On October 4, 2004, Petitioner submitted an amendment to his application, adding the following grounds for relief, quoted substantially verbatim:

> 1. This Applicant contends that his indictment for murder fails to satisfy this notice requirements of subject matter jurisdiction according to South Carolina Constitution and Statutes.
>
> 2. This applicant contends that his indictment for murder fails to allege the time and place of death nor instrument causing death depriving the court of subject matter jurisdiction.

[App. 70.]

On November 7, 2006, a hearing was held on Petitioner's PCR application, where Petitioner was represented by Charles T. Brooks, III ("Brooks"), and testimony was received from Petitioner and Loy. [App. 82–123.] At the conclusion of the hearing, the PCR court issued an oral order granting the State's motion to dismiss Petitioner's subject matter jurisdiction claims. [App. 121.] On December 12, 2006, the PCR court filed a written order denying and dismissing Petitioner's PCR application. [App.124–32.]

Brooks filed a notice of appeal with the South Carolina Supreme Court. [*See* App. 133.] However, on February 7, 2007, the South Carolina Supreme Court dismissed Petitioner's appeal from the PCR court's decision because the notice of appeal was not timely served. [App. 133–34.]

### Second PCR Application

Petitioner, through Brooks, filed a second PCR application on June 9, 2008. [App. 45–49.] In this application, Petitioner alleged Brooks failed to file a notice of appeal in his

first PCR action and requested a belated appeal of the decision on his first PCR application through an *Austin* Review.[4] [App. 47.] On July 2, 2008, the PCR court filed a consent order granting Petitioner's second PCR application, which "afforded [Petitioner] the opportunity to appeal the Order of Dismissal issued in his previous Post-Conviction Relief case . . . by filing a Notice of Appeal" from the consent order. [App. 50–51.] On July 8, 2008, Brooks filed a notice of appeal. [App. 135–36.]

On April 13, 2009, M. Celia Robinson ("Robinson") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari pursuant to *Austin v. State* in the South Carolina Supreme Court. [Doc. 16-1.] On April 15, 2009, Robinson filed on Petitioner's behalf a petition for writ of certiorari pursuant to

---

[4] In other words, Petitioner requested appellate review pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991), of the PCR court's decision on Petitioner's first PCR application. As the South Carolina Supreme Court has explained,

> This Court has allowed successive PCR applications where the applicant has been denied complete access to the appellate process. Under the PCR rules, an applicant is entitled to a full adjudication on the merits of the original petition, or "one bite at the apple." This "bite" includes an applicant's right to appeal the denial of a PCR application, and the right to assistance of counsel in that appeal.
>
> An *Austin* appeal is used when an applicant is prevented from seeking appellate review of a denial of his or her PCR application, such as when an attorney fails to seek timely review.
>
> ***
>
> *Austin* appeals are considered "belated appeals" and are used to rectify unjust procedural defects, such as when an attorney does not file a timely appeal.

*Odom v. State*, 523 S.E.2d 753, 755–56, 757 (S.C. 1999) (citations and footnote omitted).

*White v. State*[5] in the South Carolina Supreme Court.  [Doc. 16-2.]  The State filed a return on July 9, 2009.  [Doc. 16-3.]

On January 24, 2011, the South Carolina Court of Appeals filed an order granting Petitioner's petition for writ of certiorari pursuant to *Austin v. State* to conduct a belated review of the denial of Petitioner's first PCR application.  [Doc. 16-4 at 1.]  Upon review, the Court of Appeals found probative evidence supported the PCR court's denial of the first PCR application and ruling that plea counsel was not ineffective in failing to assist Petitioner in serving and filing a direct appeal of his guilty plea.  [*Id.*]  Therefore, the Court of Appeals denied Petitioner's petition for writ of certiorari pursuant to *White v. State*.  [*Id.* at 1–2.]  Remittitur was issued on February 23, 2011.  [Doc. 16-5.]

**Petition for Writ of Habeas Corpus**

Petitioner, unrepresented at the time, filed this Petition for writ of habeas corpus on January 19, 2012 pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

| | |
|---|---|
| Ground One: | Was Counsel ineffective where he failed to proper[l]y investigate and Advise the Petitioner on Self Defense prior to his guilty plea |
| Ground Two: | Was Counsel Ineffective Where he failed to advise Petitioner on defense of voluntary Manslaughter |
| Ground Three: | The PCR judge erred in denying relief despite plea counsel's provision of ineffective assistance of counsel which resulted in petitioner's entering an involuntary guilty plea where plea counsel persuaded petitioner to |

---

[5] In *White v. State*, the South Carolina Supreme Court held that if the PCR court determines that the applicant never voluntarily and intelligently waived his right to appeal, on appeal of the PCR court's decision, the South Carolina Supreme Court will review the trial record as if a direct appeal had been timely perfected to determine if there was reversible error.  208 S.E.2d 35, 39–40 (S.C. 1974).

plead guilty by wrongly telling him that he was not eligible for a manslaughter charge.

Ground Four: The P.C.R. judge erred in denying relief despite plea counsel's provision of ineffective assistance of counsel in the plea bargaining process where counsel failed to have the State announce its sentencing recommendation on the record before the sentencing judge but nevertheless allowed and encouraged petitioner to enter a straight-up plea to murder without negotiation or recommendation

Ground Five: The Applicant contends that his indictment for murder fails to satisfy this notice requirements of subject matter jurisdiction according to South Carolina Constitution and Statutes And,
that his indictment for murder fails to allege the time and place of death nor instrument causing death depriving the court of subject matter jurisdiction which is also noted on pg 18 - White certiorar

Ground Six: Did the Circuit Court Judge err in accepting petitioner's guilty plea without first having him evaluated

Ground Seven: The P.C.R. judge erred in finding that petitioner was not entitled to a belated direct appeal

Ground Eight: The Circuit Court judge properly granted the right to belated review from the denial of P.C.R. with the consent of the State

Ground Nine: Was Petitioner's guilty plea knowingly and intelligently entered into

[*Id.*]  As previously stated, on April 12, 2012, Respondent filed a motion for summary judgment.  [Doc. 17.]  Through counsel, Petitioner filed a response in opposition on July 16, 2012.  [Doc. 26.]  In his response, Petitioner indicates he is withdrawing Grounds One, Four, Five, Six, and Eight and, therefore, is proceeding on only Grounds Two, Three, Seven, and Nine.  [*Id.* at 3.]  Petitioner further narrows his grounds for relief by consolidating the remaining grounds into two key claims:

6

> (1) whether the state courts properly determined that defense counsel was not ineffective for failing to advise the Petitioner that he could present a defense of voluntary manslaughter at trial; and (2) whether the state courts properly determined that the Petitioner was not entitled to a belated direct appeal.

[*Id.* at 4; *see also id.* at 5, 16 (introducing Ground Seven as one claim and Grounds Two, Three, and Nine as another claim).]

## APPLICABLE LAW

### Summary Judgment Standard

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)     (I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[6] Further, strict time deadlines govern direct appeal and the filing

---

[6]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d

of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[7]

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state

---

at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[7] In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." 559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533

(quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating

to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D). However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (alteration in original)). In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit. *Id.* at 417. Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, --- U.S. ---,130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied. *Id.* at 2563.

## DISCUSSION

Respondent contends the Petition is time-barred and that Petitioner is not entitled to equitable tolling. [Doc. 16 at 5–7.] The Court agrees.

**Expiration of Limitations Period**

Petitioner had one year from September 25, 2003, ten days after his sentence was final,[8] to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). Petitioner filed a PCR application on May 25, 2004 [App. 52–68], such that 243 days of the one-year limitations period had expired before Petitioner filed his PCR application. The one-year period in which to file a federal habeas petition is tolled during the pendency of a PCR application or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), and thus, the statute of limitations was tolled during the period the PCR application was pending—from May 25, 2004 until February 22, 2007, when remittitur was presumptively issued by the South Carolina Supreme Court following the court's dismissal of the appeal of Petitioner's first PCR application[9] [App. 133–34]. Therefore, the one-year limitations period began to run again on February 22, 2007 and expired 122 days later on June 24, 2007.[10]

---

[8]As previously stated, neither Petitioner nor counsel acting on his behalf filed a direct appeal, and the South Carolina courts denied Petitioner the opportunity to pursue a belated direct appeal. Therefore, his sentence entered on September 15, 2003 became final upon the expiration of the ten-day period in which he could have filed a direct appeal—September 25, 2003. *See Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) ("We hold that, where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A). In such a case, 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review' must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal."); Rule 203(b)(2), SCACR.

[9] The remittitur following the South Carolina Supreme Court's February 7, 2007 order of dismissal was not included in the record before this Court. However, the Supreme Court's order of dismissal indicates remittitur would be sent to the Clerk of Court for Dorchester County within fifteen days of the filing of the order. [App. 133–34.] Therefore, construing the remittitur date in the light most favorable to Petitioner, the Court will assume remittitur was issued on February 22, 2007, fifteen days after the order was filed.

[10] Pursuant to Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, when calculating time, the last day of the period must be included, "but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Because June 24, 2007 was a Sunday, Petitioner had until Monday, June 25, 2007 to timely file a petition for writ of habeas corpus in federal court.

Petitioner filed his second PCR application on June 9, 2008 [App. 45–49], well after the limitations period expired. Petitioner's second PCR application was granted by the PCR court, and thus, the AEDPA statute of limitations would be tolled during the pendency of the second PCR application. 28 U.S.C. § 2244(d)(2) (stating the limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending"). However, because the limitations period had expired and cannot be revived by a properly filed application for collateral review, *see, e.g.*, *Singleton v. Warden Kirkland CI*, C/A No. 0:09-1241-SB-PJG, 2010 WL 2902765, at *3 (D.S.C. May 19, 2010), *report and recommendation adopted by* 2010 WL 2902762 (D.S.C. July 21, 2010); *Brown v. Langley*, 348 F. Supp. 2d 533, 536 (M.D.N.C. 2004) ("[S]ubsequent motions or petitions cannot revive a period of limitation that has already run."), Petitioner's second PCR application did not additionally toll the one-year AEDPA limitations period.[11] As a result, the Petition—filed

---

[11] The Court also notes that another court in this district was confronted with a similar set of facts and concluded there was a strong argument that, under § 2244(d)(2), petitioners would not be entitled to toll the period between a PCR application and a belated appeal of the PCR application. *Frederick v. McCabe*, No. 9:11–211–RBH–BM, 2011 WL 6026659, at *3 n.8 (D.S.C. Sept. 29, 2011), *report and recommendation adopted by* 2011 WL 6026611 (D.S.C. Dec. 5, 2011). In *Frederick*, the petitioner did not timely perfect an appeal of his first PCR application but, through a second PCR, was granted an *Austin* review of the dismissal of his first PCR. *Id.* at *1–2. The court found the petition was untimely because the statute of limitations expired before the petitioner filed his first PCR application, but the court also discussed whether the period between the petitioner's two PCR applications could be tolled:

> In *Jimenez v. Quarterman*, 555 U.S. 113, 129 S. Ct. 681, 683–687, 172 L. Ed. 2d 475 (2009), the Supreme Court held that when a state court grants a criminal defendant the right to file an out-of-time *direct appeal* during state collateral review, before the defendant has first sought federal habeas relief, the date of finality of the conviction and the commencement of the limitations period is the conclusion of the out-of-time appeal, or the expiration of time for seeking review of that appeal. However, a subsequent motion for a belated appeal in a *state PCR action* does not retroactively toll the statute back to the filing date of the original []PCR. *See Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) [holding a motion seeking a belated appeal in Florida state court did not revive an expired AEDPA]; *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) [holding that after the

on January 19, 2012, more than four years after the expiration of the limitations period—is time-barred.

**Equitable Tolling**

Petitioner argues he is entitled to equitable tolling due to the ineffective assistance of his plea counsel, Loy, and PCR counsel, Brooks, in failing to file appeals following Petitioner's guilty plea and the denial of his first PCR application. [Doc. 26 at 5–13.] The Court concludes Petitioner has failed to demonstrate he is entitled to equitable tolling.

As the United States Supreme Court has recognized:

> Under our system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1880)). . . . Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to

---

appeal period has lapsed, an application for further appellate review ceases to be "pending" for purposes of calculating federal habeas corpus tolling provision]; *Gibson v. Klinger*, 232 F.3d 799, 804–808 (10th Cir. 2000) [concluding that a "state court's grant of leave to appeal out of time cannot erase the time period during which nothing was pending before a state court]; *Fernandez v. Sternes*, 227 F.3d 977, 981 (7th Cir. 2000) [holding that while a state process may be reviewed after the time to seek further review has expired, "the prospect of revival does not make a case 'pending' in the interim."]; *Small v. Norris*, No. 08-273, 2009 WL 1529463 at *2 (E.D. Ark. June 1, 2009) [Time period between the expiration of time to file an appeal and the filing of a motion for a belated appeal is not tolled under § 2244]. Accordingly, there is a strong argument that Petitioner is not entitled to toll the federal habeas petition during the time period in which he had no petition pending after the dismissal of his first []PCR.

*Id.* at *3 n.8. Thus, the Court concludes Petitioner is not entitled to tolling of the period between his PCR applications pursuant to § 2244(d)(2) and addresses below whether Petitioner is entitled to equitable tolling of this period.

19

> pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984).

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 96 (1990) (footnotes omitted). The Fourth Circuit has underscored the very limited circumstances in cases subject to the AEDPA where equitable tolling will be permitted, holding a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).[12]   The Supreme Court has suggested that equitable tolling is justified to relieve the operation of a limitations bar due to egregious unprofessional attorney misconduct, such as abandoning the client; a last minute change in representation beyond the client's control; failing to conduct essential services of representation like communicating with the client and performing basic legal research; and denying the client access to files and misleading the client.  *Holland*, 130 S. Ct. at 2564 (citations omitted).  Further, as previously stated, the Supreme Court has held that in addition to demonstrating extraordinary circumstances prevented the petitioner from timely filing, the petitioner must demonstrate he has been diligently pursuing his rights.  *Id.* at 2562.

Here, even assuming Petitioner is entitled to equitable tolling for the period between his first and second PCR applications—such that the limitations period would be tolled during the pendency of both PCR applications—the Petition is untimely.  First, assuming without deciding that plea counsel Loy's representation amounts to an extraordinary circumstance that prevented Petitioner from timely filing the Petition, Petitioner has failed to demonstrate he was otherwise diligently pursuing his rights.  For example, there is no indication Petitioner followed up with Loy to determine the status of the direct appeal

---

[12] Other courts of appeals have similarly expressed that equitable tolling of the AEDPA statute of limitations is to be employed sparingly. *See, e.g.*, *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (applying the general rule that "'attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling'" (citation omitted)); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling."); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) ( "[C]ounsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [the petitioner's] habeas petition in the district court within the one-year limitations period."); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (refusing to apply equitable tolling where late filing was caused by attorney's use of ordinary mail to send petition from Atlanta to Miami less than a week before it was due); *see also Rouse*, 339 F.3d at 246 ("Principles of equitable tolling do not extend to garden variety claims of excusable neglect." (citation omitted)).

Petitioner argues Loy should have known to file.[13]   Thus, Petitioner has failed to

---

[13] In the Petition, Petitioner asserts as a ground for relief ineffective assistance of counsel based on Loy's failure to file a direct appeal [*see* Doc. 1 at 14, 53–55 (asserting PCR judge erred by finding Petitioner was not entitled to a belated direct appeal; Doc. 26 at 6–10 (presenting this ground for relief as an ineffective assistance of counsel claim)], which he also presented as a ground for relief in his first PCR application [*see* App. 53, 93, 97–99]. As to whether Loy and Petitioner had discussed filing a direct appeal, Petitioner testified at the PCR hearing as follows:

> Q.   . . . Did the court ever advise you of your right to appeal?
>
> A.   No. No, ma'am.
>
> Q.   So, the court never told you - - -
>
> A.   Yes, John Loy told me that when I got convicted that day, he came back there and told me he was going to do it but I never heard nothing else from him after that.
>
> Q.   No, I'm asking you, did the court, did the judge ever tell you you had a right to appeal?
>
> A.   No, just when I got sentenced John Loy told me, he said, I got you, he said, I'm going to handle that, and I never - - -
>
> ***
>
> Q.   Did you ever indicate to Mr. Loy that you wanted to appeal?
>
> A.   He told me he was going to handle it so I didn't, I just got pleaded with a life sentence, so obviously he should know I wanted to appeal this.
>
> Q.   So, he can just read your mind and determine that?
>
> A.   He came back, as soon as I got sentenced to a life sentence he came back like he didn't, like it was a big mistake, like I wasn't getting a life sentence. He said, I'm going to file for your appeal.

[App. 97–99.] When Loy was questioned whether Petitioner asked Loy to file an appeal, Loy testified as follows:

> Q.   So, did the defendant ever ask you to appeal this?
>
> A.   He was advised in court that he could - - And I'm sorry, the answer to your question is, to the best of my recollection, no. What happened, if I could, what happened subsequent to the plea was, when he was sentenced to life without parole the judge had advised him he had ten days to file a notice of appeal, and I walked out with him, and I, you know, I wasn't happy, I mean, I wasn't pleased. And he had eventually taken the advice that I had given him, things didn't go the way that I thought they would, and what I thought the facts justified, and I walked out with him, and I told him, I guess the

demonstrate he is entitled to equitable tolling of the 243 day period between September 25, 2003, when his sentence became final, and May 25, 2004, when he filed his first PCR application. Consequently, even assuming Petitioner is entitled to equitable tolling based on PCR counsel Brooks's failure to timely file an appeal of Petitioner's first PCR application, the Petition is untimely because the AEDPA statute of limitations expired on June 25, 2011—122 days after the South Carolina Court of Appeals issued remittitur in the appeal of Petitioner's second PCR application on February 23, 2011.[14] Therefore, the Court concludes the Petition should be dismissed as time-barred.[15]

---

next thing for you to do is to file a Post Conviction Relief or a PCR, and I encouraged him to do that, and I was hoping there would be something there that would be to his benefit.

[App. 112.] Thus, the record contains conflicting accounts of whether Petitioner and Loy discussed a direct appeal; the PCR court resolved the conflicts in favor of Loy [*see* App. 128]. Moreover, Petitioner's testimony indicates that, until the PCR proceedings, there was no further contact between Petitioner and Loy following the guilty plea.

[14] Assuming without deciding that PCR counsel Brooks's representation amounts to an extraordinary circumstance, the Court is not convinced Petitioner has demonstrated he was otherwise diligently pursuing his rights during the period between his two PCR applications. The Court notes there is no indication that Petitioner followed up with Brooks following the dismissal of the appeal from the denial of Petitioner's first PCR application, and Petitioner has not argued he did not know the appeal had been dismissed. Further, Petitioner acknowledges he waited almost eleven months following the denial of his petition for writ of certiorari in the appeal of his second PCR application to file the Petition. [Doc. 26 at 12–13.]

Further, in arguing the period between the dismissal of the first PCR appeal and the filing of the second PCR application should be equitably tolled, Petitioner states, "Respondent does not appear to argue that this period of time should count against the Petitioner." [Doc. 26 at 10.] While Petitioner is correct that Respondent counts this period as tolled, Respondent expressly states that he has assumed that this period is tolled—in other words, Respondent does not argue that it should or should not be tolled but merely assumes that it is. [Doc. 16 at 6.] In any event, the Court notes that Respondent is correct as to the ultimate outcome; even if this period is tolled—such that Petitioner had 122 days from February 23, 2011, when remittitur was issued in the appeal of his second PCR, to file a federal habeas petition—the Petition is untimely.

[15] Petitioner argues the Petition is timely for two additional reasons. First, Petitioner argues "this Court should equitably toll §2244(d)(1) due to the state courts' refusal to grant the Petitioner a belated direct appeal"; Petitioner contends the Petition would be timely pursuant to *Jimenez v. Quarterman*, 555 U.S. 113 (2009), if he had been granted a belated direct appeal. [Doc. 26 at 13–14.] Petitioner essentially argues the AEDPA statute of limitations should be equitably tolled because Petitioner should prevail on the merits of his claim. As explained above, whether a petitioner is entitled to relief on the merits of his grounds for relief does not determine whether the petitioner is entitled to equitable tolling. Thus, Petitioner is not entitled to equitable tolling on this basis.

Second, Petitioner contends he did not discover the factual predicate for his ineffective assistance

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 13, 2012
Greenville, South Carolina

---

of plea counsel ground for relief until the South Carolina Supreme Court denied his petition for writ of certiorari pursuant to *White v. State*, and therefore, this claim is subject to 28 U.S.C. § 2244(d)(1)(D). [Doc. 26 at 5, 14–15.] Thus, Petitioner argues the AEDPA statute of limitations began to run on February 23, 2011 such that the Petition, filed on January 19, 2012, is timely. Petitioner also contends that if the statute of limitations began to run when he first presented this claim to the state courts—in his first PCR action—the Petition is still timely because the limitations period would be tolled during the pendency of his two PCR actions and should be equitably tolled during the period between the two actions because of the ineffectiveness of his PCR counsel. [*Id.* at 15 n.7.]

Under § 2244(d)(1)(D), the AEDPA one-year statute of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," if this date is the latest of the four possible starting dates. Here, because Petitioner indicated on his first PCR application that his plea counsel did not file a direct appeal [App. 53], Petitioner knew the factual predicate for his ineffective assistance claim based on the failure to file a direct appeal at least as of the date he filed his first PCR application. Therefore, assuming without deciding that § 2244(d)(1)(D) applies and the AEDPA statute of limitations began to run for this claim on May 25, 2004, the day Petitioner filed his first PCR application, the Petition would still be untimely because, as explained above, more than one year of untolled time passed between the issuance of the remittitur in the appeal of Petitioner's first PCR application—February 22, 2007—and the date Petitioner filed his second PCR application—June 9, 2008.